Jean **PEYRAT** et al., doing business as Societe Saint-Louvent Peyrat & Cie, and trading under the name of **Renault** & Co., Plaintiffs,

v.

L. N. **RENAULT** & SONS, INC., and Honorable Joseph P. Kelly, United States Collector of Customs for District No. 10, Defendants.

United States District Court
S. D. New York.

Dec. 13, 1965.

**1010**

& Sons, Inc., Richard Hildreth, Fletcher, Heald, Rowell, Kenehan & Hildreth, Russell L. Law, Atkins, Law & McMorrow, Washington, D. C., Frank P. Mulligan, Kirkman, Mulligan, Bell & Armstrong, Atlantic City, N. J., of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, for defendant Joseph P. Kelly (David E. Montgomery, Asst. U. S. Atty., of counsel).

RYAN, Chief Judge.

This suit is brought under the provisions of Title 28, United States Code, Sections 1332, 1338, 1340 and under Title 15, United States Code, Sections 1121 and 1124 and under Title 19, United States Code, Section 1526. The plaintiffs and defendants have brought this non-jury suit on for trial upon a stipulation of facts, entered into after pretrial hearings. It has been further stipulated that defendant Joseph P. Kelly, United States Collector of Customs for District No. 10, will be bound with respect to the relief afforded to the parties.

The complaint pleads four separate counts. Only two counts remain for trial disposition. The first count seeks a declaratory judgment that Renault (France) has the right to sell its brandy and/or cognac brandy in the United States under the trademarks "Renault" and "Renault and Co.". The second count seeks cancellation of all United States trademark registrations of Renault (U.S.A.) which make use of the word "Renault".

The facts are basically these:

Plaintiffs are French citizens doing business as copartners and trading under the name of Renault & Co.

Defendant L. N. Renault & Sons, Inc., is a New Jersey corporation which has registered a number of trademarks, including the name "Renault" and used it in connection with the marketing of their domestic wines and other related products.

Defendant does not sell cognac brandy, which can only be made in the Cognac

Kirschstein, Kirschstein & Ottinger, New York City, for plaintiffs, Clark, Carr & Ellis, New York City, of counsel (David B. Kirschstein and Donald L. Wallace, New York City, on the brief).

Watson, Leavenworth, Kelton & Taggart, by Nicholas John Stathis, New York City, for defendant L. N. Renault

District of France, and plaintiff does not wish to sell in this country any product other than its cognac brandy. For convenience, the plaintiffs doing business as Societe Saint-Louvent Peyrat & Cie and their predecessors will hereafter be referred to as French Renault and the defendants L. N. Renault & Sons, Inc., and its predecessor will be referred to as American Renault.

In the United States, from a date at least as early as 1870 and continuously thereafter until 1935, except during the years of Prohibition (January 17, 1920–December 5, 1933), French Renault employed the trademarks "Renault & Co." and/or "Renault" in connection with cognac brandy shipped by them in commerce between France and the United States and sold in interstate commerce in the United States. Such shipments and sales were substantial in the years covered. Sales in the United States were halted in or about the year 1935, at which time French Renault's distributor went out of business. French Renault made no further shipments of cognac brandy either under the trademark "Renault & Co." or the trademark "Renault" in the United States until in or about June 1959. No efforts were made by French Renault in the years 1939–1944 to find a new distributor in the United States for their cognac brandy because of the advent of World War II. Commencing in or about 1944, French Renault and American Renault engaged in correspondence regarding distribution by American Renault of French Renault's cognac brandy in the United States under the trademarks "Renault" and "Renault & Co.". This correspondence continued until late in 1957.

American Renault has used the trademark "Renault" continuously since 1870 in the United States and in connection with the manufacture, distribution, advertising and sale of domestic wines and wine products other than brandies. Since at least 1900 the "Renault" wines of American Renault have been sold throughout the United States. American Renault's sales of wines under the trademark "Renault" except during prohibition have also been substantial. American Renault's net annual sales, approximately 75% of which are under the "Renault" trademark, have exceeded $2,000,000 during the years 1959 through 1961. In addition, American Renault has expended over $238,000 on advertising during the period from 1958 through 1961, 90% of which was expended for the promotion of wines bearing the "Renault" label. During prohibition, American Renault marketed wine tonics, bitters, wine and jellies under the trademark "Renault".

Since 1928 American Renault has registered 15 trademarks incorporating the name "Renault". All registrations are for wines and wine products, including seasoning and tonics. None are for brandy or cognac brandy.

In 1933 French Renault filed an application for the registration of the trademark "Renault & Co." for cognac brandy. American Renault opposed the application on the ground of alleged confusing similarity between "Renault & Co." for cognac and American Renault's previously registered trademarks "Renault", "L. N. Renault & Sons, Inc.", and the word "Renault" in association with a pictorial representation of the founder of the business of American Renault's predecessor. The opposition was sustained on the ground that French Renault's predecessor did not have exclusive use of its mark between 1895 and 1905 and thus was not entitled to the benefit of the "ten-year proviso" of Section 5(b) (15 U.S.C. § 85(b)) of the Act of February 20, 1905 relating to registration of trademarks, which provided for the registration of surnames such as "Renault" and under which proviso French Renault sought registration.

In 1936, American Renault filed applications for two trademarks for use of wines, "Renault" and "Renault French 75". French Renault opposed both applications on the grounds that cognac and wine were goods of the same descriptive properties and that the use of the "Renault" trademark by both parties

would result in confusion to the public. Opposition proceedings followed and testimony was taken by French Renault. In October 1938, prior to the final hearings and decision on the merits, an agreement was reached between the parties and subsequently the oppositions were withdrawn and the registrations granted to American Renault for use on its domestic wines and champagnes.

Applications were later filed by French Renault in 1947 and in 1951 to register "Renault" and "Renault & Co." as trademarks for cognac brandy. Both applications were denied on the ground, among others, that the mark sought to be registered therein was confusingly similar to American Renault's previous registrations.

In 1959 French Renault informed American Renault that they had made arrangements with a distributor to sell their cognac brandy in this country under the trademark "Renault". One week later, American Renault notified French Renault and their distributor that American Renault claimed the exclusive right to use the trademark "Renault" in connection with all alcoholic beverages and that any attempt by French Renault to sell their cognac under that trademark would be met with legal proceedings. American Renault at that time recorded the trademark registration No. 367,358 dated May 16, 1939, constituting the mark "Renault" as applied to wines, with the United States Treasury Department to prevent importation into the United States of the same or similar goods bearing the same or similar trademarks. As a result of this recordation, the defendant Joseph P. Kelly, Collector of Customs in the New York area, has prohibited importation into the United States at the Port of New York of French Renault's cognac brandy under the trademarks "Renault" and "Renault & Co.". In 1960, one shipment of cognac brandy was detained by Customs and returned to France at French Renault's expense. Since that time, French Renault has made no further shipments of cognac to the United States but it stands ready to do so if this Court will allow it. American Renault does not question French Renault's right to import their product under any other label. It is solely the use of the name "Renault" by French Renault on its cognac which it opposes.

French Renault contends that, under the letter agreement of October 1, 1938 which terminated the opposition proceedings and permitted American Renault's registration, it has an absolute right to use the trademarks "Renault" and "Renault & Co." and the tradename "Renault & Co." in connection with the shipment into and the distribution in the United States of its cognac brandy. The agreement was handwritten on French Renault's stationery and was signed by John A. D'Agostino, the then president of American Renault. The entire agreement is set forth below.

(On Renault & Co., Cognac, France letterhead)

"Cognac, France
Oct. 1, 1938.

Messrs. Renault & Co.,
Cognac, France.
Sirs:

It is stipulated that all proceedings in reference to the use of the name 'Renault' are dismissed and that the use of the name 'Renault' as applied to Cognac brandy is to be used exclusively by Renault & Co. of Cognac, France;—that the use of the name Renault in the United States as applied to wines and champagnes is to be used by L. N. Renault & Sons of Egg Harbor City, New Jersey.

It is also understood that L. N. Renault & Sons are, in the United States, the sole buyers of the cognac brandy of Renault & Co. of Cognac, France, for one year from date with an option for annual renewal.

Respectfully
L. N. Renault & Sons
By John A. D'Agostino"

That the parties considered the letter to be a contract is indicated by their actions following its completion. In a let-

ter dated December 15, 1938, an attorney for American Renault wrote to the attorney for French Renault stating that he had completely considered the situation with Mr. John D'Agostino, President of L. N. Renault & Sons, Inc. (American) and "He advises me that an agreement was entered into with your Renault Saint Louvent & Co. whereby L. N. Renault & Sons, Inc. is to represent your client in this country; in addition that Renault Saint Louvent & Co. is to have the exclusive right to use the name 'Renault' as applied to brandy and L. N. Renault & Sons, Inc. the exclusive right to use the name 'Renault' as applied to wines and champagnes. It was further understood that Renault Saint Louvent & Co. was to dismiss the oppositions, under the terms of this agreement." The letter further requested French Renault to take "immediate action to dismiss both of the oppositions." Several more items of correspondence referring to the dismissal of oppositions under the agreement were sent by both parties in January 1939. The oppositions were withdrawn by French Renault in March 1939.

■■ The law to be applied to this controversy is the law of New York. In diversity of citizenship cases, a federal court sitting in New York must use the choice-of-law rules of New York to determine which law it is to apply. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954), New York adopted the "center of gravity" or "grouping of contacts" approach for choice-of-law problems in contract situations having elements connected with more than one jurisdiction. Here, the only contact with France was the signing of the letter agreement there. The agreement was executed to settle a dispute which involved commercial matters arising from transactions only in this country and was intended to provide for the distribution of French Renault's product in this country. The contacts with New Jersey are the location of American Renault and the sale of its wine

there. The contacts with New York are the shipment of French Renault's product to New York; the location of French Renault's distributor in New York; the sale of both products in New York and the involvement of the Collector of Customs in New York. American law must be applied and whether New York or New Jersey law be the standard, the result would be the same, i. e., that the agreement is a binding contract. " * * (T)he law of New York in this regard is the same as the general law of contracts: i. e., if a party to a written contract signs it, he is bound by its terms, whatever these may be. Pimpinello v. Swift & Co., 253 N.Y. 159, 170 N.E. 530. That doctrine depends, however, upon the premise that the signer gives the other party to understand that he means to be bound by its contents; and this in turn presupposes that the party signed in such circumstances that the opposite party might justly assume that the signer meant to assure him that he might rely upon the signer's acceptance of its contents." (Caloric Stove Corp. v. Chemical Bank & Trust Co., 205 F.2d 492, 495 (C.A.2nd, 1953).)

■ In light of the circumstances, French Renault was justified in relying on the agreement and withdrawing its oppositions. It was not the intention of the parties at the time, and it would be inequitable now to hold, as American Renault contends, that French Renault was acting at its peril.

■ Following World War II and until November, 1957, there was a series of correspondence between the two parties looking toward the distribution of French Renault's cognac by American Renault. No agreement was ever reached by the parties. In 1959 French Renault obtained a new distributor and notified American Renault of this fact. In its reply letter, American Renault for the first time claimed the exclusive right to use the "Renault" name for all alcoholic beverages.

We find that French Renault's reliance on the parties' earlier agreement was reasonable and its conduct is not such as

should bar it from obtaining relief because of laches.

■ We also find that the 1938 contract is divisible because the two paragraphs deal with entirely different matters and there is a separate consideration for each. The one year exclusive distributorship with an option for annual renewal, which is the subject matter of the second paragraph of the agreement, in no way limits the effectiveness of the agreement in the first paragraph regarding the dropping of the oppositions and the division of the use of the trademark.

■ American Renault also contends that French Renault has abandoned the use of its trademark. To sustain a finding of trademark abandonment, there must be a preponderance of proof to show that its use was discontinued with intent to abandon it. Intent to abandon the trademark has not been shown. The correspondence between the parties until 1957 looking toward a distributorship arrangement, and the filing by French Renault of applications to register their trademark in 1947 and 1951, negates any intent on the part of French Renault to abandon the trademark.

■ The parties to a trademark controversy may contract between themselves for any legal purpose. The agreement is for a legal purpose and is valid and enforceable so long as no injury is caused to the public. Confusion as to the source of origin of a consumer product would be the type of public injury which must be prevented.

■ We find that the concurrent use of the trademark "Renault" on wines and brandy will not create such confusion as should bar the relief sought. In Supreme Wine Co., Inc. v. American Distilling Co., 203 F.Supp. 736 (S.D.N.Y. 1962), affd in part and reversed in part 310 F.2d 888 (2d Cir., 1962), a case involving in part the use of the trademark "Supreme" as applied to distilled alcoholic beverages and wines, the District Court held that for trademark purposes wine and distilled alcoholic beverages

may be properly considered in separate categories. The Court of Appeals for the Second Circuit reversed another part of the case, involving the use of the trademark on different distilled alcoholic beverages, but did not pass on the concurrent use of a trademark on wines and distilled beverages. Therefore, the District Court opinion is still the most recent authority in this Circuit. In this connection, it is also noteworthy that the Patent Office has established separate categories for wines and distilled alcoholic beverages and that the most recent relevant case before the Court of Customs and Patent Appeals has cited the District Court opinion in the Supreme Wine case as authority on this point. (Hood River Distillers, Inc. v. Myers, 331 F.2d 606 (C.C.P.A.1964) affg 136 U.S.P.Q. 274).) Furthermore, there was no evidence presented in the stipulated facts which indicated that there was any public confusion during the many years that the products were concurrently in use. In fact, American Renault claims that the parties had not even heard of each other between the years 1870 and 1920. If there had been any confusion in the trade or in the public, the two companies, one distributing from New York and the other from New Jersey, certainly would have heard of one another.

The most important case relied on by American Renault is Fleischmann Distilling Corp. et al. v. Maier Brewing Co., et al., 314 F.2d 149 (C.A.9, 1963). That case held that the use of the mark "Black and White" for beer infringed on the same mark for Scotch whiskey. However, that case is distinguishable from the case at bar in that Black and White Scotch was sold in the United States fifty years before the beer; the beer brewer had the entire range of unused trademarks from which to choose a name; Black and White is a very strong (because fanciful) trademark; the beer brewer was clearly trying to cash in on the popularity and good will of the trademark for scotch. In the present case, French Renault was selling its product in the United States at least as

early as American Renault; to make it use another trademark would deprive it of a valuable asset; a surname is not as strong a trademark as a fanciful one; and French Renault is not trying to pirate the good will of American Renault, but rather wishes to use a mark which it has used for over one hundred years, a mark with which its own good will is bound up.

In addition in Croton Watch Co. v. Laughlin, 208 F.2d 93 (C.A.2d Cir., 1953), a case with facts similar to those before us, the plaintiff sued both the Collector of Customs and the owner of a federally registered trademark for the purpose of requiring the Collector of Customs to permit importation of the plaintiff's goods into this country from abroad. There was in that case an agreement made fourteen years previously which had settled litigation between the parties concerning the same trademark. After holding that the District Court had jurisdiction to require the Collector of Customs to admit the goods of the plaintiff, the Court of Appeals said that the settlement agreement was an admission by the party that if the parties marked their goods in the manner set forth in the agreement, there would be no confusion between them. The Court remarked that even though the contract did not so state in express terms, the consent contained in the agreement was not limited to one importation of goods but was general. The Court held further that the same principle, that the contract is an admission, would be true even if the plaintiff were not legally bound by the contract.

After weighing the factors involved in this controversy, we have concluded that French Renault should be permitted to use the mark "Renault" and "Renault & Co." in connection with its cognac brandy sold in this country. The final decree herein must contain appropriate provisions to safeguard against such confusion by prohibiting both parties from doing any affirmative act in connection with the labeling, marketing or merchandising of its products which would indicate or imply that the product was in any way connected with the other party.

Sufficient grounds have not been shown for the cancellation of American Renault's registration.

Since all the facts are stipulated, further factual findings cannot be made, and no additional conclusions of law are required. Appropriate judgment may be settled before us on 5 days' notice providing for the relief above indicated, no costs to either party.