PRORIVER, INC., t/a Red River
Authentic Barbeque &
Grille, Plaintiff,

v.

RED RIVER GRILL, LLC, t/a The
Red River Grill, Defendant.

No. CIV.A. 96–1799 SSH.

United States District Court,
District of Columbia.

June 25, 1998.

Stephen W. Grafman, Stephen G. Topetzes, Washington, DC, for Plaintiff.

Robert N. Levin, William D. Dickerson, Levin & Tepper, Bethesda, MD, Derrick Howard (pro hac vice 7/30/98), Koepken, Keevican & Weiss, Pittsburgh, PA, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiff's motion for partial summary judgment, defendant's motion for summary judgment, and plaintiff's second motion to dismiss counterclaim, as well as certain oppositions and replies thereto. After careful consideration, the Court defers judgment on the parties' motions for summary judgment, and denies plaintiff's motion to dismiss Counts I–III of the amended counterclaim. With respect to Count IV of the amended counterclaim, however, the Court concludes that plaintiff's motion to dismiss should be converted to a motion for summary judgment and granted. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its reasoning. *See* Fed.R.Civ.P. 52(a).

## BACKGROUND

In May 1995, defendant Red River Grill, LLC ("RRG") opened a restaurant in the Capitol Hill section of Washington, D.C., under the name "Red River Grill." Apparently in order to ensure its legal right to use the name "Red River Grill," in early May defendant entered into a "License Agreement" with Cattle Barons Inc. ("CBI"), an Ohio corporation which owned the rights to the federal trademark RED RIVER CATTLE COMPANY, Registration No. 1,498,999.[1] The License Agreement purported to give defendant a license to use RED RIVER in connection with the offering of restaurant services in Maryland, Virginia, and the District of Columbia, and stated that CBI would not open or operate any restaurants incorporating RED RIVER and GRILL in the name. The License Agreement also provided that: "If Licensor [CBI] does not use the Mark [Registration No. 1,498,999] for restaurant services for eighteen (18) months Licensor agrees to voluntarily assign Registration No. 1,498,999 and all rights and good will associated with the Mark to Licensee [RRG] . . . ."

Earlier, on December 16, 1994, plaintiff Proriver, Inc. ("Proriver"), had filed for registration with the Patent and Trademark Office ("PTO") the trademark RED RIVER and the trademark and design RED RIVER AUTHENTIC BARBEQUE & GRILLE.

---

1. CBI operated two restaurants, both in the Cincinnati, Ohio, area, under the name "Red River Cattle Company."

On May 5, 1995, the PTO refused registration of both marks, primarily on the grounds that the marks "when used on or in connection with the identified [restaurant] services, so resembled the mark in U.S. Registration No. 1,498,999 [CBI's RED RIVER CATTLE COMPANY mark] as to be likely to cause confusion, to cause mistake, or to deceive."

Apparently in order to remove the impediment to the registration of its marks, on November 3, 1995, plaintiff entered into an "Assignment and Option Agreement" with CBI. In the agreement, which contained several explicit references to the License Agreement, CBI agreed to assign Registration No. 1,498,999 to plaintiff. Plaintiff also accepted the assignment of the rights and obligations of CBI in the provision of the License Agreement regarding the voluntary transfer of Registration No. 1,498,999 to defendant should the mark fall into disuse, and warranted that "PRORIVER shall not bring an action for infringement against the Licensee [RRG] based solely on the Registration [No. 1,498,999]." Plaintiff then submitted responses to the PTO, noting that Registration No. 1,498,999 was no longer an impediment to the registration of plaintiff's marks since it was no longer "a mark registered in the Patent and Trademark Office . . . by another . . ." likely to cause confusion with plaintiff's marks. *See* 15 U.S.C. § 1052(d). The PTO subsequently issued registrations to plaintiff for RED RIVER and RED RIVER AUTHENTIC BARBEQUE & GRILLE (and design), on May 7, 1996.

On May 15, 1996, defendant contacted plaintiff and informed it that opening a restaurant in Maryland, Virginia, or the District of Columbia under a name including RED RIVER and GRILL would violate defendant's rights.[2] The letter also threatened legal action. After various other correspondence, plaintiff, as an apparently pre-emptive move, filed the instant action. Plaintiff's amended complaint requests, *inter alia*, a declaration that defendant has no right to use the mark RED RIVER in the relevant territory, injunctive relief, and damages for

defendant's infringement of plaintiff's registered trademark RED RIVER. Defendant counterclaimed for breach of the Licensing Agreement, trademark infringement, unfair competition, and breach of the Assignment and Option Agreement.

## STANDARDS OF REVIEW

A motion to dismiss should not be granted "unless plaintiff[ ] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All factual doubts must be resolved and all inferences made in favor of the plaintiff. *Tele–Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334–35 (D.C.Cir.1985). In the event matters outside the pleadings are presented to and not excluded by the court, and the court assures itself that such treatment would be fair to both parties, a motion to dismiss may be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. Fed. R.Civ.P. 12(b); *Americable Int'l Inc. v. Department of the Navy,* 129 F.3d 1271, 1274 n. 5 (D.C.Cir.1997); *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1227 (D.C.Cir.1993) (Mikva, J., dissenting); *Tele–Communications,* 757 F.2d at 1334.

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specif-

---

**2.** Plaintiff has since opened restaurants in the relevant area called "Red River Authentic Bar-

beque & Grille."

ic facts showing that there is a genuine issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### I. Proriver's Motion for Partial Summary Judgment

Plaintiff contends that because CBI did not have federal or common law trademark rights to RED RIVER, defendant could not have acquired rights to RED RIVER through the License Agreement. Plaintiff thus concludes that it is entitled to judgment as a matter of law that defendant has no rights in the words RED RIVER.

■ The Court agrees with plaintiff that defendant did not acquire any trademark rights, common law or federal, in the name RED RIVER through the Licensing Agreement. It is undisputed that CBI successfully registered the trademark RED RIVER CATTLE COMPANY on August 2, 1988. *See* Reg. No. 1,498,999. This registration did not, however, give CBI any federal trademark rights in RED RIVER alone. Registration of a trademark gives the owner rights in the mark as a whole, not in the individual components. *See In re National Data Corp.,* 753 F.2d 1056, 1059 (Fed.Cir.1985). Thus, since CBI did not have any federal trademark rights in the individual phrase RED RIVER, it could not transfer any federal trademark rights in those words to defendant.

■ CBI also did not have any common law trademark rights in the relevant territory that it could transfer to defendant. Under common law, the adoption and use of a trademark in a limited market does not create an exclusive ownership of the mark in all geographical markets. *See Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 416–418, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 640 n. 1 (D.C.Cir.1982). Defendant has admitted that, at the time the License Agreement was executed, CBI had never rendered restaurant services in Maryland, Virginia, or the District of Columbia. *See* Def.'s Response to the Court's Order Regarding Facts Recited in Pl.'s Mot. for S.J., at 2. Thus, since a

"mark, of itself, cannot travel to markets where there is no article to wear the badge and no trader to offer the article," CBI cannot have transferred any common law trademark rights in RED RIVER to defendant through the Licensing Agreement. *See Hanover Star,* 240 U.S. at 416, 36 S.Ct. 357 (internal quotation omitted).

■ The Court does not, however, agree with plaintiff that defendant, as a matter of law, has no rights in the name RED RIVER. As discussed below, defendant may have a contract right to use the name RED RIVER in Maryland, Virginia, and Washington, D.C., which is enforceable against CBI and plaintiff. Moreover, should defendant proffer evidence that plaintiff fraudulently obtained its federal registration of RED RIVER, that mark may be canceled, leaving defendant as the senior user of RED RIVER in the relevant area. Thus, the Court defers its ruling on plaintiff's partial motion for summary judgment to the extent that it contends that defendant has no rights to the name RED RIVER.

### II. RRG's Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment on plaintiff's declaratory judgment request and infringement claims because (1) defendant acquired rights to use RED RIVER from CBI that are superior to plaintiff's, (2) defendant's own use of RED RIVER takes precedence over plaintiff's federal registration of RED RIVER, and (3) plaintiff is contractually estopped from suing defendant for infringement.

As previously discussed, defendant cannot have acquired trademark rights in RED RIVER from CBI. Defendant further argues, however, that it has its own common law trademark rights in RED RIVER because it used the mark in commerce before plaintiff's registration. Defendant relies on 15 U.S.C. § 1115(b)(5), which provides a defense to infringement of a federal trademark for a party who "adopted [the allegedly infringing mark] without knowledge of the registrant's prior use and has ... continuously used [the mark] ... from a date prior to (A) the date

of constructive use of the mark pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter ... or (C) publication of the registered mark under subsection (c) of section 1062 of this title." Defendant argues that because The Red River Grill opened for business in May 1995, a year before plaintiff successfully registered RED RIVER, defendant has superior rights to use RED RIVER in the Washington, D.C., area.

Defendant, however, overlooks § 1115(b)(5)(A), which provides that, in order to take advantage of the "prior use" defense, a party must have used the allegedly infringing mark from a date prior to "the date of constructive use of the mark established pursuant to section 1057(c) of this title." The "date of constructive use" in § 1057(c) is the date of "the filing of the application to register such mark ... on or in connection with the goods or services specified in the registration" so long as the mark is ultimately registered. *See* 15 U.S.C. § 1057(c). It is undisputed that although plaintiff's request to register RED RIVER was not granted until May 7, 1996, plaintiff filed an application for federal registration on December 16, 1994. Thus, in order to be a prior user, defendant would have to have used RED RIVER in commerce before December 16, 1994. Since defendant concedes that it decided to use RED RIVER in the name of its restaurant in early 1995, it does not qualify as a prior user of RED RIVER.[3]

Defendant's contract argument, however, may ultimately prove to be a complete defense to plaintiff's declaratory judgment and infringement claims. Defendant argues that, in the Assignment and Option Agreement, plaintiff agreed to be bound by the terms of the License Agreement. Plaintiff counters that the License Agreement was ineffectual to grant any rights in RED RIVER to defendant, and that even if it did grant such rights, plaintiff is not bound by that agreement.

As an initial matter, the Court rejects plaintiff's contention that the License Agreement was, as a matter of law, totally ineffective to grant any rights in RED RIVER to defendant. Although that agreement did not grant defendant trademark rights in RED RIVER which were enforceable against third parties, its terms were sufficient to establish contractual rights between CBI and defendant regarding the use of the term RED RIVER. The fact that trademark law does not give a registrant trademark rights in a fragment of its registered trademark does not mean that parties cannot create contractual rights to that effect. *See, e.g., Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1077–78 & n. 9 (5th Cir.) (indicating that contractual agreements concerning marks that are merely similar to the registered mark may be valid), *cert. denied,* —— U.S. ——, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997). As a general rule, " 'parties to a trademark controversy may contract between themselves for any legal purpose .... so long as no injury is caused to the public.' " *T & T Mfg. Co. v. A.T. Cross Co.,* 587 F.2d 533, 538 (1st Cir.1978) (citing *Peyrat v. L.N. Renault & Sons, Inc.,* 247 F.Supp. 1009, 1014 (S.D.N.Y.1965)), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2000, 60 L.Ed.2d 377 (1979); *see also VISA Int'l Serv. Ass'n v. Bankcard Holders of Amer.,* 784 F.2d 1472, 1473–74 (9th Cir. 1986); *Beer Nuts, Inc. v. King Nut Co.,* 477 F.2d 326, 328 (6th Cir.), *cert. denied,* 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973). Thus, courts have concluded on many occasions that contracts creating rights between parties which have no basis in, and are sometimes contrary to, trademark law, are still enforceable between those parties and their assigns.[4] *See, e.g., T & T Mfg.,* 587 F.2d at

---

3. The only conceivable way that defendant could have trademark rights in RED RIVER superior to plaintiff's would be if plaintiff's federal registration of RED RIVER were canceled. Though this is mentioned as a possibility in several of defendant's pleadings and its amended counterclaim, neither party has offered any evidence on the issue.

4. As discussed below, a contract fixing "trademark" rights cannot be against the public policy if it is to be enforceable. *See VISA Int'l,* 784 F.2d at 1474–75; *T & T Mfg.,* 587 F.2d at 538–39; *Beer Nuts,* 477 F.2d at 328. Thus, the Court defers any decision whether the Licensing Agreement is enforceable until the parties present evidence of whether its enforcement would injure the public.

537–539 (holding that registrant could not enjoin the production of defendant's infringing product due to a previous settlement agreement giving defendant's predecessor the right to produce such product); *Beer Nuts,* 477 F.2d at 328–329 (concluding that party could not challenge a trademark as a descriptive word because it had contracted out of that recognized defense).

■ Plaintiff, however, claims that even if the Licensing Agreement is enforceable between defendant and CBI, plaintiff is not bound by this agreement. In general, an assignee is responsible only for obligations of the assignor which it contracts to undertake. *See Rittenberg v. Donohoe Constr. Co., Inc.,* 426 A.2d 338, 341 (D.C.1981). Defendant argues that plaintiff agreed to be bound by the terms of the Licensing Agreement when it signed the Assignment and Option Agreement. The Court cannot agree, however, that plaintiff accepted all of CBI's duties in the Licensing Agreement. Although the Assignment and Option Agreement clearly acknowledges the existence of the Licensing Agreement, the only provision of that agreement which plaintiff agreed to accept was that if CBI did not use the mark RED RIVER CATTLE COMPANY for restaurant services for eighteen months, CBI would voluntarily assign Registration No. 1,498,999 and all rights and goodwill associated with it to defendant.[5] *See* Assignment and Option Agreement, at 2.

The Assignment and Option Agreement itself may, however, provide an independent contractual obligation barring plaintiff from suing defendant for its use of RED RIVER for restaurant services. Under that agreement, plaintiff expressly warranted to CBI that it would not "bring an action for infringement against [defendant] based solely on the Registration [No. 1,498,999]." *See* Assignment and Option Agreement ¶ 5. It is undisputed that plaintiff's current claim against defendant depends on its registration of RED RIVER and RED RIVER AUTHENTIC BARBEQUE & GRILLE (and design). *See* Regs. No. 1,972,494 & 1,972,-

495. It is also clear from the record that plaintiff's marks were originally refused registration due to the likelihood of confusion with CBI's RED RIVER CATTLE COMPANY mark. *See* PTO Action No. 74/611612, at 1 (May 5, 1995); PTO Action No. 74/611613, at 1 (May 5, 1995). This original decision was overturned based solely on plaintiff's representation that it had acquired the rights to Registration No. 1,498,999 from CBI so that plaintiff's proposed marks no longer presented a likelihood of confusion with " 'a mark registered in the Patent and Trademark Office . . . by another.' " *See* Response to PTO Official Action (November 3, 1995) (citing 15 U.S.C. § 1052(d)). The only conclusion that can be reached from the undisputed facts is that, due to the provision in its contract with CBI warranting that it would not sue defendant based on Registration No. 1,498,999 (of which defendant is a third-party beneficiary), plaintiff is contractually estopped from bringing a claim of infringement against defendant. *See T & T Mfg. Co. v. A.T. Cross Co.,* 449 F.Supp. 813, 826 (D.R.I.) ("[C]ourts have repeatedly held that contracts with respect to the use of trademarks may abrogate a legal defense, constitute an estoppel or signify consent to use.") (citing cases), *aff'd,* 587 F.2d 533 (1st Cir.1978), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2000, 60 L.Ed.2d 377 (1979).

■ This conclusion, however, relies on the assumption that the provision of the Assignment and Option Agreement barring plaintiff from suing defendant is enforceable. "In general, a party entering into a . . . [contract] with respect to a trademark will be held to his contract unless enforcement of the contract would result in injury to the public through confusion." *VISA Int'l,* 784 F.2d at 1473. In the event that the party seeking rescission can show some injury to the public, then the court must balance the public interest against confusion against the interest in enforcing contracts. *Id.* at 1473–74 & n. 2; *T & T Mfg.,* 587 F.2d at 538–39; *Beer Nuts,* 477 F.2d at 328. The parties have presented no evidence of likelihood of

---

**5.** The effect of this provision on defendant's counterclaim for trademark infringement is dis-   cussed below.

confusion or injury to the public. Thus, the Court defers its decision on defendant's motion for summary judgment and directs the parties to submit supplemental memoranda discussing whether the provision of the Assignment and Option Agreement warranting that plaintiff will not sue defendant based on Registration No. 1,498,999, estops plaintiff from suing defendant for use of the name RED RIVER in connection with restaurant services.[6]

### III. Proriver's Motion To Dismiss RRG's Amended Counterclaim

Finally, plaintiff moves to dismiss defendant's counterclaim on the grounds that CBI is an indispensable party as the owner of the common law trademark rights in the words RED RIVER. Defendant contends that its counterclaim does not implicate any trademark rights, common law or otherwise, of CBI, and that, therefore, it is not an indispensable party.

■ The Court agrees with defendant that CBI is not an indispensable party to the counterclaim. Because, as previously discussed, the License Agreement did not grant defendant any trademark rights, common law or federal, to RED RIVER, CBI's common law trademark rights are not at issue. The "trademark" rights on which defendant relies to bring the first three counts of its counterclaim are its own rights. Defendant claims its rights based on two theories: (1) the trademark RED RIVER CATTLE COMPANY fell into disuse for more than 18 months and thus, pursuant to the Licensing Agreement between defendant and CBI and the Assignment and Option Agreement between plaintiff and CBI, defendant has equitable title to RED RIVER CATTLE COMPANY; and/or (2) plaintiff's federal registration of RED RIVER was fraudulently obtained and

should be canceled, leaving defendant with priority in the trademark RED RIVER. *See District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C.1990) ("A third party may sue on a contract if the contracting parties intended the third party to benefit."); *Bay General Indus., Inc. v. Johnson*, 418 A.2d 1050, 1055 (D.C.1980) (same). Thus, plaintiff's motion to dismiss the first three counts of defendant's amended counterclaim is denied.[7]

■ The Court does, however, grant summary judgment to plaintiff on Count IV of the amended counterclaim, which alleges that plaintiff breached the Licensing Agreement when it opened a restaurant in the territory covered by that agreement.[8] As previously discussed, it is clear from the Assignment and Option Agreement that plaintiff did not assume any obligations of the Licensing Agreement, other than the obligation not to let RED RIVER CATTLE COMPANY fall into disuse. Thus, as a matter of law, plaintiff cannot be held liable for breaching the "exclusive territory" portion of the licensing agreement. *See Rittenberg*, 426 A.2d at 341.

### CONCLUSION

For the foregoing reasons, the Court defers judgment on the parties' motions for summary judgment pending further briefing. The Court denies plaintiff's motion to dismiss Counts I–III of defendant's amended counterclaim. Finally, the Court grants summary judgment to plaintiff on Count IV of the amended counterclaim. An appropriate Order accompanies this Opinion.

### *ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

---

6. If necessary, the parties may engage in appropriately limited further discovery on this issue.

7. The Court notes that plaintiff has submitted an affidavit addressing the viability of defendant's first theory. It is not, however, proper to consider affidavits when evaluating a motion to dismiss. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Tele–Communications*, 757 F.2d at 1334–35. Plaintiff is, of course, free to submit the affidavit should plaintiff choose to submit a motion for

summary judgment on defendant's amended counterclaim.

8. Because the issues relevant to this count have been fully briefed in defendant's motion for summary judgment and plaintiff's motion for partial summary judgment, the Court treats plaintiff's motion to dismiss Count IV of the counterclaim as a motion for summary judgment. *See* Fed. R.Civ.P. 12(b); *Marshall County*, 988 F.2d at 1227.

ORDERED, plaintiff's motion to dismiss Counts I–III of the amended counterclaim is denied. It hereby further is

ORDERED, that summary judgment on Count IV of the amended counterclaim is granted in favor of plaintiff. It hereby further is

ORDERED, that the Court defers its decision on plaintiff's motion for partial summary judgment and defendant's motion for summary judgment, pending further briefing. It hereby further is

ORDERED, that the parties shall meet and confer regarding a schedule for filing supplemental pleadings and conducting any further discovery, if necessary. Within 21 days of the date of this Order, the parties shall file a jointly proposed scheduling order, setting forth dates for filing supplemental pleadings and any further discovery.

SO ORDERED.