**Phillip G. ANDERSON, Plaintiff,**

v.

**OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION LOCAL NO. 12 PENSION AND WELFARE PLANS, Defendant.**

**No. 91–1024.**

United States District Court,
C.D. Illinois,
Peoria Division.

Aug. 19, 1992.

Craig J. Reiser, Kingery Durree Wakeman & Ryan, Peoria, IL, for plaintiff.

A. Lou Benassi, Benassi & Benassi, Peoria, IL, Michael C. Greenfield, Stephen Feinberg, Asher Gittler Greenfield Cohen & D'Alba, Ltd., Chicago, IL, for defendant.

## ORDER

McDADE, District Judge.

Before the Court is Plaintiff's Motion For Summary Judgment (# 11) and Defendant's Motion For Summary Judgment (# 13). For

the reasons stated below, Plaintiff's motion is denied and Defendant's motion is granted.

## FACTUAL BACKGROUND

This action arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), and this Court has jurisdiction of this matter under 29 U.S.C. § 1132(e). Defendant Operative Plasterers' and Cement Masons' International Association Local No. 12 Pension Plan (the Fund) is an employee pension plan within the meaning of 29 U.S.C. § 1002(2)(A) and the Fund's trustees are the Fund's administrators and fiduciaries. Plaintiff Phillip G. Anderson was a member of the Fund, and last worked in 1978 before suffering a disabling on-the-job injury. Plaintiff was found disabled pursuant to the Social Security Act as of February 25, 1987. He then applied to the Fund for disability benefits as provided in the Plan of Benefits (the Plan). Since the inception of the Plan, the trustees have consistently agreed with the findings of the Social Security Administration regarding whether an applicant is disabled. However, the Fund always has reviewed physicians' reports concerning the claimed disability in addition to the medical history of the applicant. (Stern Aff., par. 4). On September 20, 1989, the trustees determined that based on all the evidence, Plaintiff had not established disability within the meaning of the Plan. Pursuant to the trustees' authorization, Plaintiff was referred to Dr. Jesse Weinger, a certified orthopedic surgeon of the Illinois Low Back Institute, Peoria, Illinois. Dr. Weinger examined Plaintiff on December 8, 1989, and concluded that his condition was nothing more serious than a back strain and normal aging. The trustees concluded at their May 10, 1990 board meeting that Plaintiff was not totally and permanently disabled as defined in the Plan. (Ex. H).

Plaintiff has now moved for summary judgment contending that based on the plain language of the Plan, he is automatically entitled to disability benefits as of the date he was found disabled pursuant to the Social Security Act. He argues that the Plan does not give the trustees complete discretion to make their own disability determination if a participant has been found disabled pursuant to the Social Security Act. Alternatively, Plaintiff argues that if this Court determines that the trustees have discretion to determine disability, the Court should still deny the Fund's summary judgment motion because there remains a question of fact as to whether the trustees' determination was reasonable.

Defendant responds and cross-moves, contending that the language of the Plan explicitly gives the trustees discretion to determine disability regardless of the determination made by the Social Security Administration.

## LEGAL STANDARD

Summary judgment is proper only if there is no genuine issue as to any material fact and the moving part is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985). In essence, the inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one must prevail as a matter of law. *Id.*, at 251–52, 106 S.Ct. at 2511–12. As to each motion, the Court must view all inferences to be drawn from the facts in a light most favorable to the opposing party. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

## DISCUSSION

### I. THE TRUSTEES HAVE DISCRETION TO DETERMINE DISABILITY

In resolving the cross-motions for summary judgment, the Court must first look to the plain language of the Plan and determine, based on the language, whether the Plan's terms with regard to disability determinations are clear. If the language is clear, the inquiry need not go any further. *Ryan v. Chromalloy American Corp.*, 877 F.2d 598 (7th Cir.1989) (efficacy of the parties claim under unambiguous plan turns solely upon the terms of the written instrument governing the plan).

Plaintiff argues that under the plain language of the Plan, the trustees do not have any discretion to deny benefits if a partici-

pant is found disabled pursuant to the Social Security Act.

In support of this argument, Plaintiff relies on the following paragraph of the Plan:

If a participant becomes totally and permanently disabled on or after his disability benefit qualification date (as defined below), such disabled participant shall be entitled to elect, in lieu of any other benefit under this plan, a disability benefit as of the date he is determined to be entitled to total and permanent disability benefits under the Social Security Act, provided such disabled participant is not entitled to elect any other benefit which is more than an actuarial equivalent of the benefit which would be provided under this section and subject to the other conditions contained herein. (Ex. A, Plan p. 12).

Plaintiff claims that the above passage removes all discretion from the trustees to initially determine the existence of a participant's total and permanent disability. He interprets "shall be entitled to elect" to mean that he is *automatically entitled* to disability benefits.[1] Were the Court to accept Plaintiff's argument as correct, the rest of the Plan's language would be superfluous. The sentence cannot be read in isolation, but must be construed in conjunction with the rest of the Plan. The last sentence of the disputed paragraph contains the qualifying phrase "subject to the other conditions contained herein." Plaintiff makes no note of this fact and fails to explain the significance of this last sentence.

Subsequent paragraphs outline the procedure under which the trustees will determine disability. If the trustees were bound to accept the decision of the Social Security Administration, there would be no reason to define "totally and permanently disabled" in the Plan.

The Plan defines "totally and permanently disabled" as follows:

Totally and permanently disabled means that the participant is disabled as a result of sickness or injury to the extent that he is completely prevented from performing the normal and customary activities and duties of his occupation or any related or similar occupation. (Ex.A, Plan p. 12).

Additionally, the Plan explicitly grants the trustees' discretionary power to determine disability. The Plan states:

This administrator shall determine the existence, extent, cause and continuance of disability from time to time on a basis precluding individual selection and without discrimination among participants in like circumstance and any such determination shall be final and conclusive. (Ex.A, Plan p. 12).

Plaintiff maintains that this language is irrelevant because the phrase "from time to time" indicates that this clause requires the Plans's administrator to make periodic inquiries only into a participant's continuing disability. The Court rejects this argument. Plaintiff's interpretation renders the words "existence," "extent," and "cause" meaningless. The Court finds that the trustees correctly interpreted the Plan to permit them, as administrators of the plan, to "determine the *existence*, extent, cause and continuance of disability."

Additional evidence that the trustees have discretion to determine disability is found in the Plan's definition of a disabled employee. The Plan states:

DISABLED EMPLOYEE means an Active Employee *who in the opinion of a physician acceptable to the trustees* has become totally and permanently disabled prior to his Early or Normal Retirement Date but on or after his completion of 5 years of Credited Service. (Ex. A, Plan p. 3) (emphasis added).

 It is clear from the above language that the trustees have the right to choose a doctor to make a disability determination. In fact, that was the procedure in this case. The trustees sent Plaintiff to Dr. Weinger. Although the Social Security Administration determined that Plaintiff was disabled for purposes of the Social Security Act, the

---

1. Defendant suggests that the sentence sets forth an alternative triggering date for disability benefits. Whatever this sentence means, it does not specifically control how disability determinations are to be made, and in this sense, is not determinative.

trustees did not find Plaintiff disabled after an independent review of the evidence. According to the Plan, the trustees were authorized to select Dr. Weinger to make the final disability determination, and it was within their discretion to rely on Dr. Weinger's findings.[2]

## II. THERE IS NO QUESTION OF FACT CONCERNING THE REASONABLE-NESS OF THE TRUSTEES' DIS-ABILITY DETERMINATION

Even if the court accepted Plaintiff's argument that the first paragraph of the plan appeared to automatically entitle him to disability, the Court could not find for Plaintiff. "Oftentimes the plan will have a provision empowering the trustee to construe and interpret the disputed terms. When that is the case, our task is easier—we simply defer to the trustee's interpretation, assuming it's reasonable." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118–19, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). In the instant case, the plan does delegate interpretative authority to the trustees:

The administrator shall have the sole right to reconcile, determine, interpret, and construe any question or dispute arising in connection with definitions of terms, rights, status, or classification of employees, or any other dispute arising under the plan.

Any such reconciliation, determination, interpretation or construction shall be reasonable and consistent with this plan and shall be made without discrimination among employees in like circumstance and on a basis precluding individual selection. Such reconciliation, determination, inter-

pretation or construction shall be final and conclusive. (Ex.A, p. 22).

■ A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable. *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990). The trustees' interpretation of the Plan that gives them discretion to make judgments about the existence and extent of disability independently of a Social Security determination gives effect to all of the Plan's language and is internally consistent with the Plan. The trustees' interpretation of the Plan's language is reasonable and should not be disturbed. Because the trustees have discretion to determine disability, this Court can overturn their determination only by finding that they abused their discretion—which is to say, that they were not just clearly incorrect but downright unreasonable. *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990). The Seventh Circuit has consistently applied this "arbitrary or capricious" standard of review when trustees have discretionary authority. A plan that empowers the administrators "to construe and interpret the plan," brings the plan within *Bruch's* exception to de novo review—the "arbitrary or capricious" standard. *Petrilli v. Drechsel*, 910 F.2d 1441 (7th Cir.1990). The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. Any questions of judgment are left to the agency, or as here, to the administrator of the Plan. *Pokratz v. Jones Dairy Farm*, 771 F.2d 206 (7th Cir.1985).

■ Plaintiff argues that the trustees' decision was arbitrary and capricious because the trustees had previously consistently agreed with the Social Security Administration's determination.[3] There is no evidence,

---

2. Plaintiff also argues that the summary description provided to him contradicts the Plan's language and is therefore controlling. However, to recover under the summary plan description, Plaintiff must show that Defendant acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced its employees by inducing their reliance on a faulty plan summary. *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739 (7th Cir.1991). This Court has not found evidence of bad faith by Defendant nor reliance by Plaintiff.

3. Defendant counter-argues that the trustees had never been previously presented with just a SSI determination, or an applicant with almost no medical treatment whose Social Security benefit applications had been rejected at least two times. The court does not find Defendant's distinction between Supplemental Security Income (SSI) and Disability Income Benefits (DIB) programs persuasive. The SSI and DIB programs utilize the same legal standards for establishing disability. The difference between the programs is that the former is a welfare-benefits program and the latter is essentially an "insurance" program. *Os-*

however, that the trustees disregarded the Social Security Administration's determination. The trustees examined the evidence and records used by the Social Security Administration, as they have consistently done in the past, but on this occasion they did not find this Plaintiff disabled. In any event, the trustees can reach a decision inconsistent with the decision of the Social Security Administration. *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985). In *Pokratz,* the Seventh Circuit held that:

> Because disability under the Plan, as under the Social Security Act, is an all-or-nothing decision, the characterization of ambiguous symptoms of conditions that are themselves poorly understood lead to decisions that are arbitrary in the sense that a rational person could come out either way. See *Stephens v. Heckler,* 766 F.2d 284 (7th Cir.1985). Indeed, the Social Security Administration *did* come out the other way, finding Pokratz "disabled" under a statutory definition that, like the Plan, equates "disability" with inability to perform any kind of "substantial gainful work which exists in the national economy" (42 U.S.C. § 423(d)(2)(A)). *But this is not the sense of "arbitrary" that is important for judicial review. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. Id.* at p 209. (Emphasis added).

Although reasonable minds may differ on whether Plaintiff was disabled, we cannot overturn the decision of the Plan's trustees because the trustees offer a reasoned explanation for their determination. *Wardle v. Central States Pension Fund,* 627 F.2d 820, 827 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Plaintiff also argues that there is a question regarding the reasonableness of the trustees' review of the medical evidence. Defendants were not convinced by the evidence presented to the Social Security Administration, so, as authorized by the Plan, the trustees had Plaintiff examined on December 8, 1989, by Dr. Jesse M. Weinger. The Fund had no prior relationship or deal-

ings with Dr. Weinger or his clinic. Dr. Weinger's initial examination led him to conclude that:

> There was no evidence of any muscle atrophy and in fact he [Plaintiff Anderson] appeared quite fit and muscular.... It's my final impression that Anderson had an injury at work in 1978 which probably represented a back strain. For some reason or another, he's had no further rehabilitation and has not gone back to work.... There were no significant *objective* abnormalities on exam and his plain lumber spine films were negative.... It's my feeling that it's doubtful that the patient has any disabling back problems at the present time.... (Ex.F, pp. 2, 3).

Dr. Weinger also performed a lumbar MRI exam and Cybex Functional testing and concluded, based on those objective tests, that Plaintiff was not disabled. Dr. Weinger's results were as follows:

> Basically it's my feeling that this patient has very mild degenerative disc disease at the three lower lumbar levels. He has an extreme degree of deconditioning due to the fact that he's done no physical activity or work for more than ten years. This is probably contributing to his disability more than the underlying degenerative disc disease. His basic low back condition, specifically the degenerative disc disease, is not a serious condition and is usually handled by a rehabilitation and work hardening program.... There is really nothing significantly intrinsically wrong with this man's spine other than a normal aging process.... (Ex. F, pp. 4, 5).

The medical examination reports submitted to the Fund by the Plaintiff predated April 1981. The Fund had no evidence, aside from disability examinations, that Plaintiff had received any medical treatment subsequent to 1979. In addition, Plaintiff's previous applications for Social Security benefits had been rejected at least two times. Based on the foregoing evidence, the Court concludes that the trustees' review of the medical evidence was reasonable.

*trowski v. Heckler,* 609 F.Supp. 1109 (D.C.Ill. 1985).

■ Finally, Plaintiff unconvincingly argues that the trustees did not like him and were looking for any way to deny his disability application. In support of this theory, Plaintiff offers evidence made by an unidentified trustee. At Plaintiff's appeal hearing, one of the trustees asked Plaintiff if he had cried enough to his congressman to receive Social Security benefits. While Defendants conceded that this statement was true, the Court is not persuaded that this fact suggests an impermissible bias against Plaintiff or that the trustees' decision reflected bad faith or impermissible considerations. This evidence is insufficient to create a material issue of fact that would preclude summary judgment in favor of the Fund.

### Conclusion

The Court concludes that the Plan gives the trustees the discretion to make judgments about the existence and extent of a participant's disability, regardless of whether the Social Security Administrator has found a participant disabled. In this case, the trustees' determined that Plaintiff was not disabled and the evidence supports this reasonable determination. Applying the deferential standard of review, the evidence found in the Plan's language requires that the Court uphold the trustees' decision. Therefore, Plaintiff's Motion For Summary Judgment is DENIED and Defendants Motion is GRANTED.