Dale M. **WINNINGHAM**, Plaintiff and Supplemental Plaintiff–Appellant (93–3577), Plaintiff–Appellee (93–3578),

v.

**NORTH AMERICAN RESOURCES CORPORATION**, Defendant–Appellant (93–3578),

Insurance Company of North America; Neare, Gibbs & Company, Supplemental Defendants–Appellees (93–3577).

Nos. 93–3577, 93–3578.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 4, 1994.

Decided Nov. 9, 1994.

Paul B. Martins (argued), James B. Helmer, Jr. (briefed), Helmer, Lugbill, Martins & Neff, Cincinnati, OH, Meredith Lynn Lawrence (briefed), Lawrence & Schletker, Covington, KY, for Dale M. Winningham.

James J. Montgomery (argued and briefed), Montgomery, Rennie & Jonson, Frederick M. Morgan, Jr., Cincinnati, OH, for Insurance Co. of North America, Neare, Gibbs & Co.

Richard D. Lameier (argued and briefed), Arthur H. Schlemmer (argued), Rosemary E. Scollard, Barron, Peck & Bennie, Cincinnati, OH, for North American Resources Corp.

* Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation.

Before: GUY and BOGGS, Circuit Judges; and CLELAND, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

These consolidated appeals stem from a personal injury action filed by Dale M. Winningham against the vendor and purchaser of the land on which his injuries occurred. After a lengthy trial, the jury found that the defendants had acted negligently, and damages were awarded in favor of Winningham. One of the defendants, North American Resources Corporation (NARC), contends on appeal that it cannot be liable to Winningham because the accident causing his injuries actually occurred on public land, not its property, and thus it owed no duty to him. NARC also argues in the alternative that it satisfied any duty it might have owed to Winningham, since Winningham's employer knew of the dangerous conditions that led to the accident. NARC further maintains that the district court's award of prejudgment interest in favor of Winningham was an abuse of the court's discretion.

Also on appeal is Winningham's contention that the district court erred in granting summary judgment in favor of Insurance Company of North America (INA) and Neare, Gibbs & Company. The court's holding was based on its finding that the insurance policy issued to NARC by INA and Neare, Gibbs did not cover the type of accident at issue in this case. Winningham asserts, however, that the plain language of the policy establishes coverage for the type of accident that led to his injuries and, to the extent any language is ambiguous, it must be interpreted against the insurer. Thus, according to Winningham, the district court's reading of the policy was in error and the granting of summary judgment must be reversed.

After carefully reviewing the record, we conclude that the district court's interpretation of the insurance policy was correct, and we affirm on the basis of Judge Spiegel's well-considered written opinion on this issue.

This finding makes it unnecessary to consider the other issues raised on appeal, with the exception of INA's claim that the court improperly assessed prejudgment interest. We agree with INA on this matter, and reverse the award of prejudgment interest.

## I.

The facts of this case have been provided in three separately published district court opinions. *See Winningham v. North Am. Resources Corp.*, 809 F.Supp. 546 (S.D. Ohio 1992); *Winningham v. North Am. Resources Corp.*, 812 F.Supp. 1460 (S.D. Ohio 1992); *Winningham v. Sexton*, 820 F.Supp. 338 (S.D. Ohio 1993). Rather than restate them in full, we will summarize only those facts necessary for a resolution of the issues raised on appeal.

Winningham was injured in an accident that occurred at 3291 Southside Avenue, an industrial property fronting on the Ohio River. The property extends northward from the river and is bisected east to west by Southside Avenue, a public road running parallel to the river. Railroad tracks parallel Southside Avenue on the northern border of the property. Three river docks are located on this property. At the time of the accident, the property was under the joint control of NARC and Cincinnati Auto Shredders (CAS)[1] and had been leased by NARC to North American Terminal (NAT),[2] Winningham's employer.

Winningham worked at NAT as a longshoreman. His duties included the loading and unloading of cargo from barges and rail cars. To unload the barges and cars, an 80-foot conveyor was used. This conveyor was routinely transported between the railroad tracks and the docks. Sometimes, when the conveyor was moved across Southside Avenue, it would become entangled in a Cincinnati Gas & Electric Company (CG & E) common neutral line[3] and an electrical quadraplex power line,[4] which had been hung by NARC. When the conveyor became entangled in these lines, the quadraplex line power was turned off. The lines then had to be raised manually over the conveyor in order to allow the conveyor to pass.

At approximately 7:30 p.m. on April 28, 1988, Winningham and several other NAT employees were instructed to move the conveyor from the north portion of the property across Southside Avenue to the docks. While moving the conveyor across Southside Avenue, it became entangled in the common neutral and quadraplex lines. As a result, Winningham's supervisor, Mark Wetterich, instructed Winningham and his fellow employee, Robert Johnson, to climb up the conveyor and free the lines.

Winningham and Johnson climbed up the conveyor. Johnson freed the common neutral line and started to descend. Winningham stood on the conveyor and tried to free the quadraplex line. Located 5 feet and 2 inches above the quadraplex line was a 7,200 volt CG & E transmission line. As Winningham began to lift the quadraplex line to free it from the conveyor, he straightened his body and came into contact with the transmission line. As a result, he received a high voltage electric shock and was thrown approximately 25 to 30 feet to the ground. He was severely injured. His forearms and hands were amputated, and he suffered severe burns to his body.

Winningham filed his first complaint on November 17, 1988.[5] Winningham later filed

---

1. CAS owned 3291 Southside Avenue, but had previously entered into an installment land contract to sell the property to NARC. The contract provided that title would pass from CAS to NARC when NARC made its final payment on the purchase price.

2. NAT is a wholly owned subsidiary of NARC.

3. A common neutral line is a de-energized cable.

4. A quadraplex power line is a heavy electrical cable, comprised of three insulated power lines braided around an uninsulated cable.

5. Winningham's first complaint was filed against Robert B. Sexton, the president of NAT. NAT had failed to maintain the required insurance coverage and was a noncomplying employer with regard to the Longshore and Harbor Workers' Compensation Act and the Ohio Workers' Compensation Act. 812 F.Supp. at 1475. The complaint alleged that, since Sexton had failed to provide the required compensation benefits, he was personally liable. This complaint was later voluntarily dismissed.

two amended complaints against NARC and CAS, charging each of them with negligence that resulted in his injuries. Approximately three weeks before the trial was to begin, NARC filed a motion for leave to file a motion for summary judgment. The court denied this motion, and Winningham's case went to trial. During the trial, NARC filed a motion for directed verdict. This, too, was denied. On June 29, 1992, the jury found that NARC and CAS both had acted negligently. Specifically, the jury determined that the negligence attributable to NARC was 84 percent and the negligence attributable to CAS was 16 percent. The jury further found that the total damages suffered by Winningham were $1,925,000.

NARC then filed a motion for judgment as a matter of law, and Winningham filed a motion asking the court to award him prejudgment interest of 10 percent a year against NARC. The district court denied NARC's motion and granted Winningham's motion in the amount of $276,672.29.

CAS paid $292,966.60 in satisfaction of its portion of the jury verdict. NARC, however, failed to pay its share. Therefore, on November 2, 1992, Winningham filed a supplemental petition against INA, who insured NARC, and Neare, Gibbs, INA's agent.[6] This petition was filed pursuant to Ohio Revised Code § 3929.06, which provides that, upon recovery of a final judgment for bodily injury, a personal injury judgment creditor may file a supplemental petition seeking to compel the satisfaction of judgment under the applicable insurance contract in the action in which the judgment was rendered.

Motions for summary judgment were filed by Winningham and by INA and Neare, Gibbs. The primary issue raised by both motions was whether INA and Neare, Gibbs were liable under the INA policy. The district court found the plain language of the INA policy excluded from coverage those injuries arising out of the type of accident at issue in this case. The court also found that the intent of the parties was consistent with this reading of the INA policy. Accordingly,

the district court denied Winningham's motion for summary judgment and granted the motion filed by INA and Neare, Gibbs.

NARC and Winningham both filed timely notices of appeal.

## II.

There are two insurance policies involved in this case. In addition to the INA policy, NARC had a policy with United States Fidelity & Guaranty Company (USF & G). Prior to trial, Winningham settled with USF & G for $900,000. Pursuant to the terms of this settlement, Winningham agreed to "not execute, or attempt to execute, upon any asset or assets which are now owned or which may hereafter be owned by [NARC], pursuant to any judgment which has been or will be rendered in favor of Winningham and against [NARC]...." (App. 312.) The agreement further provided that Winningham reserved the right to seek to collect or execute upon NARC's other policy of insurance—the INA policy. Therefore, the settlement with USF & G limited the entities from whom Winningham could attempt to satisfy his judgment to INA and Neare, Gibbs. In granting summary judgment, however, the district court found that INA and Neare, Gibbs were not liable because the terms of the INA policy excluded from coverage the type of accident that caused Winningham's injuries.

We review a district court's grant of summary judgment under a *de novo* standard of review. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). We examine the grant of summary judgment to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989) (citation omitted). Although we must draw all justifiable inferences in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), there must

---

6. We will refer to the insurance policy NARC had purchased from INA through Neare, Gibbs as the "INA policy."

be a disagreement regarding an item of material fact. *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). The evidence presented must be sufficient to permit the plaintiff to recover if accepted by the jury. Under Ohio law,[7] courts are required to give unambiguous contract provisions their plain meaning. *Karabin v. State Auto Mut. Ins. Co.,* 10 Ohio St.3d 163, 462 N.E.2d 403 (1984).

■ The INA policy states:

A. This insurance covers the legal liability of the Assured for loss or damage to any vessels and equipment, cargoes, freights and other interests on board, which are in their care, custody or control at or in the vicinity of the Assured's landing(s) on the:

Ohio River at Mile 474.6

B. This insurance also covers the legal liability of the Assured for loss or damage to property other than that referred to in paragraph A. hereof caused by said vessels and their cargoes which are in their care, custody or control, or for loss of life or personal injury if arising out of only those operations covered above.

The district court's analysis of the INA policy turned on its reading of the phrase "on board" in Paragraph A. The court observed:

The INA insurance policy only covers "other interests on board, *which* are . . . at or in the vicinity. . . ." Because of the word "which," the "at or in the vicinity" language limits the types of "interests on board" covered under the insurance policy. Thus, a personal injury claim "at or in the vicinity" of NARC's landing on the Ohio River at Mile 474.6 is only covered if it is "on board."

820 F.Supp. at 342 (citation omitted) (emphasis in original). The court then reasoned that, while the INA policy covers personal injuries arising out of "operations covered above," Paragraph A "limits coverage to property damage for various goods and to

'other interests on board.' Therefore, INA's insurance policy does not cover Mr. Winningham's personal injuries because they did not occur 'on board.' " *Id.* at 343.[8]

Although agreeing with this analysis, we note an additional factor that supports the district court's interpretation. Paragraph A addresses property damage to a certain class of goods. This class is comprised of "cargoes, freights and other interests on board" that are in the control of NARC and "in the vicinity of" NARC's landings. The meaning of this paragraph is later clarified by a list of exclusions. Included in this list is a clause that excludes from coverage any "loss or damage to cargo being loaded or unloaded[.]" (App. 352). Thus, it is clear that the INA policy does not cover property damage incurred during the loading or unloading of cargo. Paragraph B expands the scope of the INA policy to include coverage for personal injuries. In order for a personal injury to be covered, however, it must arise out of an operation that is covered by Paragraph A. Because Paragraph A does not cover damages incurred during the loading and unloading of cargo, a personal injury incurred during such operations would not be covered.

Further support for our reading of the INA policy can be found by comparing its terms with that of the USF & G policy. The USF & G policy excludes from coverage damages that occur on the water. The INA policy supplements the USF & G policy by covering those damages that arise on the water, but excludes from coverage damages occurring on land, including the loading and unloading of cargo. Accordingly, it is reasonable to conclude that Winningham's injuries would be covered by the USF & G policy, but not by the INA policy.

■ The district court's granting of Winningham's motion for the award of prejudgment interest was based on its finding that INA and Neare, Gibbs did not rationally assess NARC's potential liability in this case

---

7. In a diversity action, such as this one, the law of the forum state controls. *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir.1991). Ohio is the forum state, and just as the district court applied the law of Ohio to each of the issues before it, so will we.

8. Because we have affirmed on this issue on the basis of the trial judge's written opinion, we do not find it necessary to set forth in detail all of the reasoning utilized by the trial judge.

and failed to make a good faith effort to settle. This finding was made long before the court decided the summary judgment motion. As the district court subsequently concluded, however, and as we hold in this opinion, INA and Neare, Gibbs are not liable under the INA policy. Therefore, their refusal to enter into settlement negotiations cannot be characterized as irrational or as evidence of bad faith, and the award of prejudgment interest was in error. Accordingly, we **AFFIRM** the granting of summary judgment in favor of INA and Neare, Gibbs, and **VACATE** the award of prejudgment interest.