**PRORIVER, INC., t/a Red River Barbeque & Grille,**
Plaintiff,

v.

**RED RIVER GRILL, LLC, t/a Red River Grill, Defendant.**

Civil Action No. 96–1799 SSH.

United States District Court, District of Columbia.

Nov. 24, 1999.

Stephen W. Grafman, Stephen G. Topetzes, Washington, DC, for Plaintiff.

Robert N. Levin, William D. Dickerson, Levin & Tepper, Rockville, MD, Derrick Howard (pro hace vice), Koepken, Keevican & Weiss, Pittsburgh, PA, for Defendant.

### OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiff's motion for partial summary judgment, defendant's motion for summary judgment, and plaintiff's supplemental motion for summary judgment, as well as certain oppositions, replies, and supplements thereto. Upon consideration of the entire record, the Court (1) grants in part, and denies in part, plaintiff's motion for partial summary judgment; (2) grants in part, and denies in part, defendant's motion for summary judgment; and (3) grants plaintiff's supplemental motion for summary judgment. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its reasoning. *See* Fed.R.Civ.P. 52(a).

## BACKGROUND

At the heart of this case is a dispute over the right to use conjointly the words "Red River" and "Grill" (or "Grille") in the names of restaurants located in the greater Washington, D.C., area. Plaintiff Proriver, Inc., operates restaurants in northern Virginia and Maryland under the name "Red River Authentic Barbeque & Grille." Defendant Red River Grill, LLC, operates a restaurant in Washington, D.C., under the name "Red River Grill."[1] Both parties trace their rights to use these restaurant names to separate agreements that they entered into with Cattle Barons, Inc. ("CBI"), an Ohio corporation which once owned the rights to the federal trademark RED RIVER CATTLE COMPANY, Registration No. 1,498,999.[2]

Defendant entered into a "License Agreement" with CBI in May 1995. The agreement purported to give defendant a license to use RED RIVER in connection with the offering of restaurant services in Maryland, Virginia, and the District of Columbia, and provided that CBI would not open or operate any restaurant incorporating the terms "Red River" and "Grill" in its name. The License Agreement also provided that if CBI did not use the RED RIVER CATTLE COMPANY mark for a consecutive period of eighteen months, CBI would voluntarily assign that mark, as well as all of the rights and goodwill associated with it, to defendant.

For its part, plaintiff entered into an "Assignment and Option Agreement" with CBI in November 1995. In that agreement, CBI assigned the RED RIVER CATTLE COMPANY mark to plaintiff. Although the agreement contained several references to CBI's agreement with defendant, plaintiff did not accept the assignment of all of CBI's rights and obligations under the License Agreement, but rather only those regarding the voluntary assignment of the RED RIVER CATTLE COMPANY mark to defendant if the mark fell into disuse for eighteen months. In the agreement, plaintiff also warranted that it would not "bring an action for infringement against the Licensee [defendant] based solely" on the RED RIVER CATTLE COMPANY mark.

Plaintiff's motivation for acquiring the RED RIVER CATTLE COMPANY mark from CBI grew out of its inability to register the marks RED RIVER and RED RIVER AUTHENTIC BARBEQUE & GRILLE with the Patent and Trademark Office ("PTO"); on May 5, 1995, the PTO had denied registration of these marks, primarily on the ground that, when used in connection with restaurant services, they so resembled the RED RIVER CATTLE COMPANY mark "as to be likely to cause confusion, to cause mistake, or to deceive." The subsequent assignment of CBI's trademark, however, enabled plaintiff to successfully register its desired marks with the PTO on May 7, 1996.[3] At this point, therefore, plaintiff owned the rights to three trademarks: RED RIVER CATTLE COMPANY, RED RIVER, and RED RIVER AUTHENTIC BARBEQUE & GRILLE. Nevertheless, on May 15, 1996, defendant sent plaintiff a letter informing it that operating a restaurant in Maryland, Virginia, or the District of Columbia under a name incorporating the terms "Red River" and "Grill" would violate defendant's

---

1. Plaintiff's Red River Authentic Barbeque & Grille restaurants specialize in barbeque, while defendant's Red River Grill restaurant specializes in Southwestern food.

2. To clarify, when the Court uses capital letters to spell out a name, it is referring to the name as a trademark. Thus, for example, RED RIVER CATTLE COMPANY refers to the RED RIVER CATTLE COMPANY trademark.

3. CBI's assignment of the RED RIVER CATTLE COMPANY mark to plaintiff removed the impediment to plaintiff's registration of RED RIVER and RED RIVER AUTHENTIC BARBEQUE & GRILLE because plaintiff's desired marks no longer resembled "a mark registered in the Patent Trademark Office ... by another ... as to be likely, when used," to cause confusion with the other mark. *See* 15 U.S.C. § 1052(d).

rights under the License Agreement. Plaintiff filed the instant action shortly thereafter, apparently to pre-empt legal action that defendant had threatened in its letter. As amended, plaintiff's complaint requests, *inter alia,* a declaration that defendant has no right to use the RED RIVER mark in the relevant territory, an injunction barring defendant from using that mark, and damages for defendant's alleged infringement of plaintiff's RED RIVER trademark. Defendant counterclaimed for breach of the Licensing Agreement, trademark infringement, unfair competition, and breach of the Assignment and Option Agreement.[4]

The parties filed several dispositive motions. Plaintiff filed a motion for partial summary judgment asserting that it was entitled to judgment as a matter of law that defendant did not possess any rights in the name RED RIVER, and also filed a motion to dismiss defendant's amended counterclaim. For its part, defendant moved for summary judgment on plaintiff's amended complaint and its own amended counterclaim on the grounds that defendant had acquired superior rights to RED RIVER through the License Agreement and its own use of the mark, and that plaintiff was contractually estopped from asserting any claims or defenses against defendant.

The Court ruled on the parties' motions in its June 25, 1998, Opinion. The Court denied plaintiff's motion to dismiss defendant's amended counterclaim as to Counts 1–3; as to Count 4, however, the Court converted plaintiff's motion to dismiss into one for summary judgment, and granted it. *Proriver, Inc. v. Red River Grill, LLC,* 27 F.Supp.2d 1, 7–8 (D.D.C.1998). As to the parties' summary judgment motions, the Court first found that defendant had not acquired any trademark rights in RED RIVER through the License Agreement or defendant's prior use of the mark. *Id.* at 4–5. The Court then considered whether the License Agreement gave defendant

any contract rights in RED RIVER. Although the Court concluded that the License Agreement created contractual rights between defendant and CBI regarding use of the name, it found that these rights were not binding on plaintiff because, as an assignee, plaintiff was responsible only for those obligations of CBI, an assignor, that it had contracted to undertake. *Id.* at 6 (citing *Rittenberg v. Donohoe Constr. Co.,* 426 A.2d 338, 341 (D.C. 1981)). Finding that plaintiff had assumed only those rights and obligations in the License Agreement regarding the transfer of the RED RIVER CATTLE COMPANY mark to defendant if the mark fell into disuse for eighteen months, the Court concluded that plaintiff was not bound by defendant's contractual right to use RED RIVER.

Despite finding that defendant had no affirmative contract right that was enforceable against plaintiff, the Court indicated that defendant may have a complete defense to plaintiff's infringement claims insofar as the Assignment and Option Agreement bars plaintiff from bringing an action for infringement against defendant based solely on the RED RIVER CATTLE COMPANY mark. The Court found that plaintiff's infringement claims against defendant were in fact based solely on the RED RIVER CATTLE COMPANY mark because they alleged violations of plaintiff's rights to the RED RIVER and RED RIVER AUTHENTIC BARBEQUE & GRILLE marks, the registration of which the PTO had approved solely on the basis of the rights to the RED RIVER CATTLE COMPANY mark that plaintiff had acquired from CBI. Accordingly, the Court tentatively concluded that plaintiff was "contractually estopped from bringing a claim of infringement against defendant." *Id.* This conclusion was tentative because it relied on the assumption that the relevant provision in the Assignment and Option Agreement was enforceable, which first requires a finding that enforcement of

4. Defendant filed an amended counterclaim    on December 23, 1997.

the contract provision would not result in "injury to the public through confusion." *Proriver*, 27 F.Supp.2d at 6 (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1473 (9th Cir.1986)). Because the parties had presented no evidence on the likelihood of confusion or injury to the public, the Court directed the parties to submit supplemental memoranda on this issue, and deferred consideration of plaintiff's motion for partial summary judgment and defendant's motion for summary judgment pending those submissions. *See id.* at 4, 7. The parties have since addressed the enforceability of the contract provision in filings with the Court. In one of those filings, plaintiff also moved for summary judgment on defendant's claim that it is entitled to assignment of the RED RIVER CATTLE COMPANY mark under the terms of the Assignment and Option Agreement.

In sum, the Court is presented with two questions: (1) whether the provision in the Assignment and Option Agreement barring plaintiff from suing defendant for infringement is enforceable; and (2) whether defendant is contractually entitled to assignment of the RED RIVER CATTLE COMPANY mark. Resolution of the first question will enable the Court to reach a final decision on plaintiff's motion for partial summary judgment and defendant's motion for summary judgment on plaintiff's amended complaint, while resolution of the second question will determine the outcome of plaintiff's supplemental motion for summary judgment and defendant's motion for summary judgment on its amended counterclaim.

5. The Court emphasizes that whether enforcement of the contract will cause confusion and whether it will cause injury are separate inquiries under this analysis. Although one case has identified public confusion with public injury, *see Peyrat v. L.N. Renault & Sons, Inc.*, 247 F.Supp. 1009, 1013 (S.D.N.Y.1965) (stating that "[c]onfusion as to the source of origin of a consumer product would be the type of public injury which must be prevent-

## STANDARD OF REVIEW

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the non-moving party's case, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### 1. *Enforcing the Provision in the Assignment and Option Agreement*

■ As the Court explained in its earlier Opinion, "a party entering into a ... [contract] with respect to a trademark will be held to his contract unless enforcement of the contract would result in injury to the public through confusion." *Proriver*, 27 F.Supp.2d at 6 (quoting *VISA Int'l*, 784 F.2d at 1473). First, the party seeking rescission must show that enforcement of the contract will create confusion that will cause harm to the consuming public, as opposed to mere harm to a party's business.[5] *See VISA Int'l*, 784 F.2d at 1473–4

ed"), the trend of more recent cases is to distinguish the two, *see, e.g.*, *VISA Int'l*, 784 F.2d at 1474 n. 2 (noting that inquiries are separate); *T & T Mfg. Co. v. A.T. Cross Co.*, 587 F.2d 533, 538 (1st Cir.1978) (stating that "the Degree or Extent of public confusion must be examined in order to ascertain whether there is any significant harm to the public").

& n. 2; *T & T Mfg. Co.*, 587 F.2d at 538. If the party makes this showing, the court must then weigh this confusion and resulting harm against contract law's policy of holding parties to the terms of their agreements, in order to determine whether enforcement of the contract ultimately violates public policy. *See VISA Int'l*, 784 F.2d at 1474 & n. 2; *T & T Mfg. Co.*, 587 F.2d at 538; *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 328 (6th Cir.1973).

■ In this case, enforcement of the provision in the Assignment and Option Agreement barring plaintiff from suing defendant will result in the simultaneous operation of similarly-named restaurants in the greater Washington, D.C., area: defendant's Red River Grill restaurant and plaintiff's Red River Authentic Barbeque & Grille restaurants. The parties agree that the co-existence of these restaurants may confuse the public, *see* Pl.'s Resp. to Def.'s Reply Mem. at 8–9; Def.'s Reply Mem. at 3, but disagree over the extent of injury such confusion will cause. Plaintiff argues that allowing the restaurants to operate under similar names poses a risk of serious injury to the public because, in the event of "an outbreak of botulism or some other problem with food sources," confusion over the restaurant names could lead an individual to believe "that one restaurant is safe to eat at, when it is not." [6] Pl.'s Resp. in Opp. to Supp. Mem. at 3. By contrast, defendant argues that allowing them to co-exist will not cause any cognizable injury because, at most, restaurant goers will be inconvenienced when, as a result of the name confusion, they show up

at one restaurant and learn that it is not the restaurant that they had intended to patronize.[7] As discussed below, the Court finds a threat of only minimal injury to the public from allowing Red River Grill and Red River Authentic Barbeque & Grille to operate simultaneously, and concludes that this level of injury does not outweigh the public interest in holding parties to their contractual commitments.

As the parties suggest, confusion over the restaurant names occasionally may lead restaurant goers in the area to show up at Red River Grill when they actually intended to patronize Red River Authentic Barbeque & Grille, or vice versa. Nevertheless, the extent of possible harm resulting from this mistake is minimal. First, those misguided patrons who never realize their mistake will not suffer any injury because the quality of food in one restaurant is not alleged to be inferior to that in the other; the main difference between the restaurants is in the type of cuisine they serve.[8] *See T & T Mfg. Co.*, 587 F.2d at 538 (noting importance of absence of allegation that one product was inferior to the other). Second, those misguided patrons who do realize their mistake will suffer more of an inconvenience or annoyance than injury. At most, the patron will be forced to either correct his mistake by traveling to the desired restaurant, settle by patronizing the non-desired restaurant, or patronize neither restaurant. None of these outcomes can be deemed a significant injury to the public. Indeed, cases finding non-negligible injuries to the public

---

**6.** Botulism is "[a]n extremely virulent, dangerous food poisoning caused by botulin and characterized by vomiting, abdominal pain, coughing, muscular weakness, and visual disturbance." *The American Heritage Dictionary* 200 (2d ed.1982).

**7.** Plaintiff argues that defendant is taking inconsistent positions by making light of the risk of confusion after previously warning of the gravity of this risk. *See* Pl.'s Resp. to Def.'s Reply Mem. at 7. Defendant, however, does not deny that there is a risk of confusion; rather, defendant argues only that the confu-

sion does not pose a risk of serious injury to the public. Whether enforcement of a contractual term will create public confusion and whether it will inflict public injury are separate inquiries. *See supra* note 5. Plaintiff does not show that defendant has ever made any allegations of public injury. Thus, plaintiff's argument is unavailing.

**8.** Some restaurant goers may not realize their mistake if, for example, they have never dined at any of these restaurants before, or are not familiar with the type of cuisine they serve.

involve a greater level of harm. *See, e.g.,* *VISA Int'l,* 784 F.2d at 1473 n. 1 & n. 2 (noting possible injury from confusion over credit card insurers would not "necessarily be insignificant" because confusion would lead consumers to choose wrong insurers; identity of insurer is important insofar as consumers rely on reputation and financial strength of insurers they select); *Kegan v. Apple Computer, Inc.,* 1996 WL 667808, *3 (N.D.Ill.1996) (finding that enforcement of agreement recognizing Apple Computer's appropriation of the rights to the word GUIDE "could harm the public in that other businesses would be estopped from using that word to describe their products").

The Court does not agree with plaintiff's assertion that, in the event of an outbreak of food poisoning that affects one of these restaurants, confusion over the names will lead people to erroneously frequent the unsafe restaurant.[9] First, if people come to know of such an outbreak, it is probably because they acquired the relevant information from the media or public health authorities; in all likelihood, these entities would publicize such information in a way that clearly informed consumers of the location of the unsafe establishment. Second, assuming people with knowledge of the outbreak even decided to patronize a restaurant with the words "Red River" and "Grill[e]" in its name during this period, they would likely take additional precautions to ensure that they were not patronizing the unsafe restaurant. Thus, plaintiff's allegation of harm is not credible.

**9.** In raising this argument, plaintiff implies that the PTO made a determination that allowing these similarly-named restaurants to operate simultaneously created this risk. *See* Pl.'s Resp. in Opp. to Supp. Mem. at 3 ("it is likely, as the PTO determined, that an outbreak of botulism ... might result in an individual believing that one restaurant is safe to eat at, when it is not"). Plaintiff, however, does not indicate where the PTO made this determination. In denying plaintiff's original application to register RED RIVER and RED RIVER AUTHENTIC BARBEQUE &

Balanced against the risk of confusion and minimal harm from allowing Red River Grill and Red River Authentic Barbeque & Grille to operate simultaneously is the interest of contract law in holding plaintiff to the terms of the Assignment and Option Agreement. In that agreement, which contains clear references to defendant's use of the RED RIVER CATTLE COMPANY mark under the License Agreement, plaintiff expressly warranted that it would not bring an action for infringement against defendant based solely on that mark. In all likelihood, this warranty facilitated plaintiff's successful negotiation of CBI's assignment of the mark, which in turn enabled it to register the two related marks it desired. Given the nature of plaintiff's warranty, the Court finds that there is a strong contract law interest in holding plaintiff to its terms. Because enforcing this contractual provision imposes a risk of only minimal injury through confusion, the interests of contract law dictate that the Court enforce that provision here.

The Court's conclusion closely resembles the conclusion reached by the district court in *T & T Mfg. Co.* In that case, Cross Company ("Cross") had entered into a settlement with The Quill Company ("Quill") in which it agreed not to sue Quill for infringement of Cross's pen trademark, as long as Quill adhered to certain manufacturing restrictions. *T & T Mfg. Co. v. A.T. Cross Co.,* 449 F.Supp. 813, 815 (D.R.I.), *aff'd,* 587 F.2d 533 (1st Cir.1978). In determining whether this agreement was enforceable, the court found that similarity in

GRILLE, the PTO did determine that a risk of confusion existed between those marks and the RED RIVER CATTLE COMPANY mark. The PTO's decision, however, did not mention any risk of harm flowing from this confusion in the event of a possible outbreak of food poisoning. Nor is the PTO's finding of confusion synonymous with a finding of the harm plaintiff alleges. Because plaintiff's suggestion that the PTO made a determination of this risk of harm is, at best, unclear, the Court gives it no weight.

the pens manufactured by Cross and Quill would in fact create a likelihood of confusion, but found no risk of significant harm from this confusion because there were no allegations that one company's product was inferior to the other's, even though "a consumer might claim harm because he sought the prestige of Cross but got Quill instead." *Id.* at 827. The court then found that the risk of harm did not outweigh the interest in enforcing contracts because Cross had "voluntarily contracted with . . . Quill in a way which allowed for the possibility of confusion." *Id.* Similarly, in this case, a risk of significant harm does not exist because the parties have not alleged that the quality of one restaurant is inferior to that of the other; at most, restaurant patrons will suffer annoyance or inconvenience should they confuse the two restaurants. Moreover, a strong policy reason exists for holding plaintiff to its contractual undertaking because plaintiff voluntarily agreed not to sue defendant over its use of the RED RIVER CATTLE COMPANY mark, and did so with notice of the manner in which defendant was using the related RED RIVER mark. Thus, as in *T & T Mfg. Co.*, the Court concludes that plaintiff is estopped from asserting its infringement claims against defendant.

The Court's conclusion has the following effect on the parties' summary judgment motions. Plaintiff's motion for partial summary judgment argues that plaintiff is entitled to judgment as a matter of law that defendant possesses no rights in RED RIVER. The Court has already concluded

both that defendant does not possess any trademark rights in RED RIVER, and that any affirmative rights to use that name acquired by defendant under the License Agreement are not binding on plaintiff. *See Proriver*, 27 F.Supp.2d at 4–5. To that extent, therefore, the Court grants plaintiff's motion for partial summary judgment. However, to the extent that plaintiff's motion asserts that defendant possesses no contract rights whatsoever in RED RIVER, it is denied. As discussed above, defendant does possess rights in that mark—the right not to be sued by plaintiff for infringement over its use.

Defendant's motion for summary judgment is similarly granted in part and denied in part. Defendant's motion asserts that it is entitled to judgment as a matter of law on plaintiff's amended complaint.[10] As amended, plaintiff's complaint contains three counts: Count 1 seeks declaratory relief, while Counts 2 and 3 allege that defendant's operation of the Red River Grill restaurant infringes its trademark rights to RED RIVER and RED RIVER AUTHENTIC BARBEQUE & GRILLE, respectively. Because the Court has concluded that plaintiff is estopped from asserting infringement claims against defendant, defendant's summary judgment motion is granted with respect to Counts 2 and 3 of plaintiff's amended complaint. The Court, however, denies defendant's motion as to Count 1 because Count 1 does not assert an infringement claim.[11]

**10.** Defendant's motion for summary judgment also asserts that it is entitled to judgment as a matter of law on its amended counterclaim. Because the Court has already determined that defendant has no trademark rights in RED RIVER, the fate of defendant's motion as to its counterclaim turns on whether defendant is entitled to assignment of the RED RIVER CATTLE COMPANY mark under the terms of the Assignment and Option Agreement. The Court addresses this question in Part 2 of its Discussion.

**11.** Count 1 seeks, *inter alia,* a declaration that, as between the parties: (1) plaintiff has exclusive ownership of, and right to use, the RED RIVER mark; (2) defendant has no such ownership or right of use; and (3) plaintiff's use of that mark does not infringe any rights possessed by defendant. Although plaintiff is not contractually estopped from asserting Count 1, the Court notes that, with the issuance of this Opinion, it will have resolved most—if not all—of the issues underlying plaintiff's request for declaratory relief in the course of ruling on the parties' various summary judgment motions.

## 2. Assignment of the RED RIVER CATTLE COMPANY Mark to Defendant

■ Plaintiff has filed a supplemental motion for summary judgment on defendant's claim that it is entitled to assignment of the RED RIVER CATTLE COMPANY mark from plaintiff under the terms of the Assignment and Option Agreement. In that agreement, plaintiff assumed CBI's obligations in the provision of the License Agreement requiring CBI to assign the mark to defendant if CBI did not use the mark for restaurant services for eighteen months. In its supplemental motion, plaintiff argues that the condition for assignment of the mark has not been met because it has not failed to use the RED RIVER CATTLE COMPANY mark within an eighteen-month period. Defendant counters that it is CBI's non-use of the mark, not plaintiff's, that triggers the assignment obligation; because CBI has not used that mark within the requisite period, defendant asserts that it is entitled to assignment of the mark. Thus, the outcome of plaintiff's supplemental summary judgment motion turns on whose non-use of the mark—CBI's or plaintiff's—triggers the duty to assign under the terms of the Assignment and Option Agreement.[12] The Court finds that plaintiff's non-use is controlling.

In construing the relevant provision in the Assignment and Option Agreement, the Court's principal objective is to ascertain and give effect to the intent of the parties to the agreement.[13] *See Hamilton Ins. Services, Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 714 N.E.2d 898, 900 (1999); *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities*

*Auth.*, 78 Ohio St.3d 353, 678 N.E.2d 519, 526 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Foster Wheeler,* 678 N.E.2d at 526 (quoting *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987)). The Court must give unambiguous terms in the provision their "ordinary meaning, unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or contents" of the contract. *Id.* (quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978)); *accord Hamilton Ins. Services,* 714 N.E.2d at 901; *Winningham v. North American Resources Corp.*, 42 F.3d 981, 985 (6th Cir.1994).

The relevant provision in the Assignment and Option Agreement states:

> CATTLE BARONS also hereby assigns to PRORIVER, and PRORIVER accepts the assignment of, the rights and obligations of CATTLE BARONS in that provision in the License Agreement which provides essentially as follows:
>
>> If CATTLE BARONS does not use the mark RED RIVER CATTLE CO. for restaurant services for eighteen (18) months[,] CATTLE BARONS agrees to voluntarily assign Registration No. 1,498,999 and all rights and goodwill associated with the mark RED RIVER CATTLE CO. to Licensee.

Assignment and Option Agreement ¶ 1. The parties' disagreement as to whose non-use of the mark triggers the duty to assign is based on conflicting understandings of the scope of the obligations that CBI delegated to plaintiff in this provi-

---

**12.** Defendant's summary judgment motion on its amended counterclaim also turns on this issue. *See supra* note 10.

**13.** The Court applies Ohio law because the Assignment and Option Agreement provides that it "shall be governed by the law of the State of Ohio." Assignment and Option Agreement ¶ 7(d). Furthermore, as a general rule,

questions as to the validity or "effect of an assignment are governed by the law of the place where the assignment was made." 6 Am.Jur.2d *Assignments* § 11 (West 1999). Here, CBI's assignment to plaintiff of certain rights and obligations under the License Agreement was made in Ohio. *See* Assignment and Option Agreement ¶ 7(d).

sion.[14] In plaintiff's view, the provision should be construed as delegating the performance of two duties to plaintiff: the duty not to let the mark fall into disuse for eighteen months and the duty to assign the mark to defendant if it does. In defendant's view, the provision should be construed as delegating the performance of only one duty: the duty to assign the mark if CBI stopped using it within the specified period.

The Court finds that the provision should be construed as delegating to plaintiff both the duty not to let the RED RIVER CATTLE COMPANY mark fall into disuse and the duty to assign the mark if it does. First, this construction is consistent with the intent of the parties, as evidenced by the language they employed in their agreement. The provision states that CBI assigns to plaintiff "all" of its rights and obligations in the relevant provision in the License Agreement. Because not letting the mark fall into disuse is an implied obligation of the obligation to assign the mark if it does, it falls within the ambit of the obligations that CBI delegated to plaintiff.[15] Indeed, it would be nonsensical to find that, in delegating "all" of its obligations under the License Agreement provision to plaintiff, CBI sought to reserve in itself the obligation not to let the mark fall into disuse.

Despite the clear implication of this term, defendant argues that the language of the provision in the Assignment and Option Agreement still supports its interpretation because it differs from the language of the parallel provision in the License Agreement. The License Agreement identifies the party whose disuse triggers the duty to assign as "Licensor," while the Assignment and Option Agreement identifies that party as "CATTLE BARONS."[16] According to defendant, because plaintiff had the option to acquire all of CBI's rights and obligations in the License Agreement, and could thereby succeed to the title of "Licensor" under that agreement, it was necessary to substitute "CATTLE BARONS" for "Licensor" to clarify that CBI's non-use of the mark triggered the duty to assign, and would continue to do so even if plaintiff later became the "Licensor." Def.'s Reply Mem. at 8. The Court disagrees. First, the provision in the Assignment and Option Agreement used the word "essentially" to indicate that it was summarizing the parallel provision in the License Agreement. As this summary served only to give plaintiff notice of the obligations it was assuming, defendant's emphasis on its choice of terminology is misplaced. Second, defendant's argument cannot be applied consistently. The provision in the Assignment and Option Agreement also substituted "CATTLE BARONS" for "Licensor" in describing the party that must assign the RED RIVER CATTLE COMPANY mark if it falls into disuse. Under the logic of defendant's argument,

14. Although the provision in the Assignment and Option Agreement refers to this transfer as an "assignment" of CBI's rights and obligations under the particular provision in the License Agreement, the Court more appropriately refers to it as a "delegation." "The word 'assignment' is generally associated with rights under a contract, while 'delegation' refers to duties." 6 Am.Jur.2d *Assignments* § 3 (West 1999). When a transfer of both rights and duties occurs, "it is permissible to characterize the transaction as an 'assignment' of the contract." *Id.* However, because the relevant provision in the License Agreement imposed obligations, but did not confer rights, on CBI, the Court considers CBI to have delegated the performance of

those obligations under the License Agreement.

15. The Court notes that it has already found that plaintiff assumed "the obligation not to let RED RIVER CATTLE COMPANY fall into disuse." *Proriver*, 27 F.Supp.2d at 7.

16. In relevant part, the License Agreement states: "If Licensor does not use the Mark for restaurant services for eighteen (18) months Licensor agrees to voluntarily assign Registration No. 1,498,999 and all rights and good will associated with the Mark to Licensee...." License Agreement ¶ 6.

this change in terminology indicates that CBI also retained the obligation to assign the mark to defendant. This conclusion, however, is obviously incorrect because CBI no longer possessed any rights in the mark after entering into the Assignment and Option Agreement. Thus, defendant's argument is able to account for one substitution of "CATTLE BARONS" for "Licensor," but not the other. This inconsistency indicates that the change in terminology simply does not carry the significance that defendant alleges.[17]

The nature of the Assignment and Option Agreement also evidences the parties' intent to make plaintiff's non-use of the RED RIVER CATTLE COMPANY mark trigger the duty to assign. Plaintiff acquired all of the rights to the RED RIVER CATTLE COMPANY mark from CBI in the Assignment and Option Agreement. Defendant would have the Court believe that, in acquiring those rights, plaintiff allowed another party to determine whether it could keep them by letting CBI's non-use of the mark trigger its duty to assign the mark. Such a scenario strains credulity. Because CBI gave up all its rights to the mark by entering into the Assignment and Option Agreement, it was likely that CBI would not use the mark from that point forward.[18] Thus, under defendant's interpretation of the provision, plaintiff would have been obligated to relinquish the mark within eighteen months of acquiring it because CBI's non-use would have triggered the duty to assign. The Court does not believe that the parties intended for the provision in the Assignment and Option Agreement to have this effect. Rather, the Court finds that the parties intended to give plaintiff control over whether it kept the rights to the RED RIVER CATTLE COMPANY mark by making plaintiff's non-use of the mark trigger the duty to assign.[19]

In sum, the Court finds that the language and nature of the Assignment and Option Agreement indicate that plaintiff's non-use of the RED RIVER CATTLE COMPANY mark triggers the obligation to assign. Because defendant does not dispute that plaintiff has complied with its obligation to ensure that the mark does not fall into disuse, the Court concludes that defendant is not entitled to assignment of the mark. Accordingly, the Court denies defendant's motion for summary judgment on its amended counterclaim, and grants plaintiff's supplemental motion for summary judgment on Counts 1 and 2 of defendant's amended counterclaim.[20]

17. Defendant also emphasizes that plaintiff did not succeed to the title of "Licensor" as used in the License Agreement. Def.'s Reply Mem. at 7–8. The relevance of this fact is unclear. Although the Licensor's non-use of the RED RIVER CATTLE COMPANY mark triggers the duty to assign under the terms of the License Agreement, the Licensor—CBI—delegated the performance of the obligation to use the mark to plaintiff, which it was entitled to do. See infra note 19. That plaintiff never succeeded to the title of Licensor does not affect the validity of CBI's delegation; plaintiff still stepped into the shoes of CBI for the purpose of determining whether the mark had fallen into disuse for eighteen months.

18. Although CBI reserved "to itself any common law rights it may have [had] in the name RED RIVER," there is no indication that CBI retained any rights to use the RED RIVER CATTLE COMPANY mark when it transferred its "entire right, title and interest" in the mark to plaintiff. Assignment and Option Agreement ¶ 1 and Appendix A.

19. Defendant does not allege, nor does the Court find, that it was improper for CBI to delegate performance of its obligation to ensure that the RED RIVER CATTLE COMPANY mark did not fall into disuse. As a general rule, the performance of duties in a contract may be delegated unless they require the "exercise of personal skill or discretion." Restatement (Second) Contracts § 318, Comment c (1981); accord 3 Williston Contracts § 411 (3d. ed.1960). Here, it does not appear that use of the mark required the exercise of any personal skill or discretion by CBI. Thus, CBI was free to delegate that obligation.

20. Summary judgment is warranted on Count 1 because that count alleges that defendant is entitled to assignment of the RED RIVER CATTLE COMPANY mark under the terms of

.As the Court granted summary judgment on Count 4 in its previous Opinion, Count 3 is all that remains of defendant's amended counterclaim.[21]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part plaintiff's motion for partial summary judgment. The Court grants defendant's motion for summary judgment as to Counts 2 and 3 of plaintiff's amended complaint, denies defendant's motion as to Count 1 of that complaint, and denies defendant's motion as to its amended counterclaim. Finally, the Court grants plaintiff's supplemental motion for summary judgment on Counts 1 and 2 of defendant's amended counterclaim. An appropriate Order accompanies this Opinion.

## *ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that plaintiff's motion for partial summary judgment is granted to the extent that defendant does not possess any trademark rights in RED RIVER, or any rights in RED RIVER under the License Agreement that are enforceable against plaintiff, but denied to the extent that defendant has the right to use the RED RIVER mark without being sued by plaintiff for infringement. It hereby further is

ORDERED, that defendant's motion for summary judgment is granted as to Counts 2 and 3 of plaintiff's amended complaint, denied as to Count 1 of that com-

plaint, and denied as to defendant's amended counterclaim. It hereby further is

ORDERED, that summary judgment is granted in plaintiff's favor on Counts 1 and 2 of defendant's amended counterclaim. It hereby further is

ORDERED, that the parties shall confer on the status of the remaining claims in this case and the manner in which they should be resolved, and shall submit a joint statement as to any agreement they are able to reach on those questions within twenty-one days of the date of this Order. If, however, they are unable to reach an agreement on either one of those questions, they shall submit separate statements outlining their respective positions within the noted time-frame.

SO ORDERED.

---

the Assignment and Option Agreement. Count 2 alleges that plaintiff's use of the RED RIVER, RED RIVER AUTHENTIC BARBEQUE & GRILLE, and RED RIVER CATTLE COMPANY marks violates its "rights under the laws of the United States of America concerning trademarks." Countercl. ¶ 35. The Court previously concluded that defendant has no trademark rights in RED RIVER, *see Proriver,* 27 F.Supp.2d at 4–5, and now concludes that defendant has no trademark rights in RED RIVER CATTLE COMPANY because it is not entitled to assignment of that mark from plaintiff. Thus, because the Court has determined that defendant does not possess the trademark rights it alleges, summary judgment is warranted on Count 2.

21. Count 3 of defendant's amended counterclaim alleges that plaintiff's use of the terms "Red River" and "Grille" in connection with restaurant services constitutes unfair competition.